IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LINDA VILES,

          Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

No. CV 08-6093-MO

OPINION AND ORDER

**MOSMAN, J.,**

Plaintiff Linda Viles seeks judicial review of the final decision of the Commissioner of the Social Security Administration finding her not disabled and denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Following a thorough and careful review of the record, I AFFIRM the final decision of the Commissioner.

## BACKGROUND

I.   **Administrative History**

On December 8, 2003, Ms. Viles filed an application for DIB. (A.R. 76-78.)[1] Ms. Viles alleges she was disabled as a result of her bipolar disorder. (A.R. 80.) She claims benefits beginning May 27, 2000, and continuing through March 31, 2004 (the "relevant period"), when

---

[1] Citations "A.R." refer to indicated pages in the official transcript of the administrative record filed on September 4, 2008 (#12).

PAGE 1 - OPINION AND ORDER

she was last eligible to receive benefits.[2]  (A.R. 26, 28, 76.)  The application was denied initially

and on reconsideration.  (A.R. 43-44, 38-41.)  On May 17, 2006, a hearing was held where the

Administrative Law Judge ("ALJ") heard testimony from Ms. Viles, medical expert ("ME") Dr.

Robert Davis, and vocational expert ("VE") Nancy Bloom.  (A.R. 444-74.)  At the hearing, Ms.

Viles was represented by Melissa Mona.[3]

   The ALJ issued his decision on September 28, 2006, in which he found Ms. Viles was not

entitled to benefits.  (A.R. 34.)  That decision became the Commissioner's final decision on

January 26, 2008, when the Appeals Council denied Ms. Viles's request for review.  (A.R. 6); 20

C.F.R. § 404.981.  Ms. Viles appealed by filing this action on March 20, 2008.

## II.   <u>Ms. Viles's History</u>

   At the time of the hearing, Ms. Viles was a fifty-six-year-old woman living with her

husband.  (A.R. 456, 470.)  She graduated from high school and attended college, but did not

receive a college degree.  (A.R. 425, 470-71.)  Ms. Viles's past relevant work includes working as

an office cleaner, surveyor's aide, and home caregiver.  (A.R. 95.)

   Ms. Viles's experience with mental illness began in 1985 when she was hospitalized for

schizophrenia.  (A.R. 80.)  In 1986, Ms. Viles was diagnosed with bipolar disorder and

prescribed lithium, a prescription which was renewed at least through the relevant period.  (*Id.*)

---

[2] Ms. Viles does not challenge the ALJ's conclusion that Ms. Viles's eligibility for benefits ceased on March 31, 2004.  (A.R. 26; Pl.'s Br. (#22) 10-20.)

[3] The record contains conflicting evidence as to whether Ms. Mona was an attorney. *Compare* (A.R. 26 (ALJ opinion indicating Ms. Mona was not an attorney)), *and* (A.R. 22 (Request for Review of Hearing Decision/Order indicating same)), *with* (A.R. 18 (SSA transcript transmittal sheet indicating Ms. Mona was an attorney)), *and* (A.R. 444-74 (hearing transcript indicating same)).

In 1989, Ms. Viles experienced her first decompensation event, or "episode," characterized by anxiety, depression, fear, stress, paranoia, loss of appetite, loss of memory, lack of sleep, and feelings of worthlessness and isolation.  (A.R. 80-81.)  After the episode, Ms. Viles was employed until 1999.  (A.R. 81.)

From May 27 through May 31, 2000, Ms. Viles was hospitalized for another episode. (A.R. 143-53.)  The episode coincided with Ms. Viles's failure to take her lithium medication, as well as with a period of high stress—Ms. Viles had recently quit her job and relocated from Prineville, Oregon to Eugene, Oregon.  (A.R. 204, 221.)  Although Ms. Viles was only hospitalized for five days, she says the effects of the episode continued for a month.  (A.R. 143-53, 204.)

On October 19, 2003, and then from October 20 through November 3, 2003, Ms. Viles was hospitalized for another episode.  (A.R. 178-202.)  The episode coincided with Ms. Viles's unintentional overdose on her lithium medication, as well as with another period of high stress—Ms. Viles was caring for her mother-in-law, who had recently been in a car accident. (A.R. 199-200.)

Between her 2000 and 2003 episodes, and between her 2003 episode and March 31, 2004, Ms. Viles was unemployed, took her medication properly, and was not hospitalized.  (A.R. 154-76, 214-33.)  Doctors' reports during this period described Ms. Viles as generally healthy, but also consistently noted some symptoms of Ms. Viles's mental illness.  For example, in 2001 Dr. Carole Bekkenhuis-Johnson described Ms. Viles as sleeping, eating, and concentrating normally, having a normal energy level, and acting emotionally well rather than depressed or suicidal, but as entertaining "weird or bizarre thoughts," such as that Ms. Viles is God's chosen person and

that Ms. Viles's grandson is the Christ of the second coming. (A.R. 216.) In 2003, Dr. Thomas

Boyd reported Ms. Viles was "performing for the most part within normal limits." (A.R. 195.)

In January 2004, Dr. Alan Cohen reported Ms. Viles was exhibiting increased symptoms of

depression. (A.R. 366.) Ms. Viles continued to see doctors after March 31, 2004, and many

reports from this period are included in the administrative record. (A.R. 277-93, 320-22, 330,

340, 371-91, 421-36.) Most notably, in June 2007—after the ALJ's hearing—Ms. Viles saw Dr.

David Truhn, who performed a comprehensive evaluation and diagnosis. (A.R. 421-36.) Ms.

Viles submitted Dr. Truhn's report to the Appeals Council for consideration in the Council's

decision whether to review the ALJ's denial of benefits. (A.R. 11.)

## DISCUSSION

### I.    Standards

The initial burden of proof rests on a claimant to establish disability. *Roberts v. Shalala*,

66 F.3d 179, 182 (9th Cir. 1995). The claimant must demonstrate the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which . . . has lasted or can be expected to last for a continuous period of not less

than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner must conduct a five-step sequential inquiry to determine whether a

claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987);

20 C.F.R. § 404.1520. Each step is potentially dispositive. At step one, the claimant is not

disabled if the Commissioner finds the claimant is engaged in substantial gainful activity.

*Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(a)(4)(i). At step two, the claimant is not disabled

if he has no "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at

140-41; 20 C.F.R. § 404.1520(a)(4)(ii).  At step three, the claimant is disabled if his impairments

meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are

so severe as to preclude substantial gainful activity."  *Yuckert*, 482 U.S. at 141; 20 C.F.R.

§ 404.1520(a)(4)(iii).

If the inquiry proceeds to step four, the Commissioner must assess the claimant's residual

functional capacity ("RFC"), which is an assessment of the sustained, work-related activities the

claimant can do on a regular and continuing basis.  20 C.F.R. § 404.1545(a); *see also* Social

Security Ruling ("SSR") 96-8p, 1996 WL 374184.  At step four, the claimant is not disabled if

the Commissioner finds the claimant retains the RFC to perform his past work.  *Yuckert*, 482

U.S. at 142; 20 C.F.R. § 404.1520(a)(4)(iv).  At step five, the Commissioner must determine

whether the claimant is able to do any other work that exists in the national economy.  *Yuckert*,

482 U.S. at 142; 20 C.F.R. § 404.1520(a)(4)(v).  Here the burden shifts to the Commissioner to

show that a significant number of jobs exist in the national economy that the claimant can do.

*See Yuckert*, 482 U.S. at 141-42; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

If the Commissioner meets this burden, the claimant is not disabled.  *Tackett*, 180 F.3d at 1098-

99.

A district court must affirm the Commissioner's decision if it is based on proper legal

standards and the findings are supported by substantial evidence in the record as a whole.  42

U.S.C. § 405(g); *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Rollins v. Massanari*,

261 F.3d 853, 856 (9th Cir. 2001).  "Substantial evidence means more than a mere scintilla but

less than a preponderance; it is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  If

the "evidence is susceptible to more than one rational interpretation," one of which supports the Commissioner's final decision, the district court must uphold the Commissioner's decision. *Andrews*, 53 F.3d at 1039-40; *Batson*, 359 F.3d at 1193; *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

**II.    The ALJ's Decision**

The ALJ held a hearing on May 17, 2006, during which he heard testimony from Ms. Viles, ME Dr. Robert Davis, and VE Nancy Bloom. (A.R. 445-74.) Dr. Davis testified that proper medication allowed Ms. Viles to function at a relatively high level; episodes were occurring with greater frequency; and if Ms. Viles was able to work, she would need a fairly quiet environment with little exposure to other workers and the general public. (A.R. 458-63.)

At step one, the ALJ found Ms. Viles did not engage in substantial gainful activity during the relevant time period. (A.R. 28.) At step two, the ALJ found Ms. Viles suffered from bipolar disorder, a severe impairment. (*Id.*) Third, the ALJ determined Ms. Viles's impairment did not meet or medically equal a listed impairment. (A.R. 28-30.) At step four, the ALJ determined that, after accounting for the effects of her lithium medication, Ms. Viles had a RFC allowing her to work in a quiet environment with no exposure to the general public and with only infrequent interaction with co-workers. (A.R. 29-32.) Based on these limitations, the ALJ determined Ms. Viles was unable to perform the requirements of her past relevant work. (A.R. 33.) Fifth, relying on the testimony of VE Bloom, the ALJ concluded Ms. Viles was not disabled because, based on Ms. Viles's age, education, work experience, and RFC, she could work as an industrial cleaner, motel cleaner, or electronics worker. (A.R. 33-34.)

Ms. Viles contends that the ALJ improperly considered the effects of Ms. Viles's medication, (Pl.'s Br. (#22) 13; Pl.'s Reply (#28) 1-2), and that Ms. Viles was disabled even while taking her medication, (Pl.'s Br. (#22) 13-16; Pl.'s Reply (#28) 1-2). Ms. Viles also argues that the ALJ improperly discounted the testimony of certain doctors, (Pl.'s Br. (#22) 15-17; Pl.'s Reply (#28) 2-10), and that the RFC is missing an essential limitation, (Pl.'s Br. (#22) 18). Finally, Ms. Viles contends the ALJ improperly discredited Ms. Viles's testimony and the lay testimony of Ms. Viles's husband. (Pl.'s Br. (#22) 18-20; Pl.'s Reply (#28) 10-11.)

## III.    Ms. Viles's Medication

### A.    *Whether the ALJ May Account for the Effects of Ms. Viles's Medication*

Ms. Viles contends the ALJ erred as a matter of law by holding Ms. Viles accountable for her failure to take her medication rather than attributing the failure to Ms. Viles's mental impairment. (Pl.'s Br. (#22) 13.) The ALJ determined Ms. Viles was not disabled while properly medicated, (A.R. 31, 34), Ms. Viles's episodes were the result of her failure to properly medicate, (A.R. 29, 30), and that "[f]ailure to comply with prescribed treatment may be sufficient grounds to deny benefits," (A.R. 30). Ms. Viles relies on *Nguyen v. Chater*, which provides "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." 100 F.3d 1462, 1465 (9th Cir. 1996) (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)). However, as the Ninth Circuit stated definitively in *Warre v. Commissioner of Social Security Administration*, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility." 439 F.3d 1001, 1006 (9th Cir. 2006); *see also* SSR 82-59, 1982 WL 31384 ("Individuals with a *disabling impairment* which is amenable to treatment that could be expected to restore their

ability to work must follow the prescribed treatment to be found under a disability."); 20

§ 404.1530 ("In order to get benefits, you must follow treatment prescribed by your physician if

this treatment can restore your ability to work."). Further, Ms. Viles did not fail to "seek

rehabilitation," but instead, after she sought rehabilitation and was prescribed treatment, Ms.

Viles failed to take her medication. Therefore, Ms. Viles's failure to take her medication may be

adequate grounds for denying her benefits.

### B.      *The Cause of Ms. Viles's Episodes: Improper Medication Versus Stress*

Next Ms. Viles argues that her episodes were caused by stress rather than improper use of

her medication. (Pl.'s Br. (#22) 13-16; Pl.'s Reply (#28) 1-2.) As evidence, Ms. Viles points to

social worker Lisa Smith's report that "the stress of [Ms. Viles's recent move] combined with

concern about her husband's health problems contributed to another manic episode, despite

taking medications." (A.R. 227.) Ms. Viles also points to reports that, prior to improperly taking

her medicine and the resulting onset of her 2000 and 2003 episodes, she was experiencing

preliminary symptoms of the impending episodes. For example, Ms. Viles points to reports that,

prior to failing to take her medicine and the onset of her 2000 episode, she had not slept for three

nights, believed her husband was abusive, and feared getting help from a clinic because she

thought she would be hospitalized. (A.R. 413-14.) Regarding her 2003 episode, Ms. Viles relies

on reports that she was having manic thoughts to the point of psychosis, was feeling angered, was

unable to sleep, and screamed for her daughter prior to taking an extra dose of her medicine and

the subsequent onset of her episode. (A.R. 157-59, 189.)

However, substantial evidence supports the ALJ's conclusion that, although "[t]here was a

component of stress imposed by the claimant's impending move to be closer to her daughter . . .

PAGE 8 - OPINION AND ORDER

the major cause of this acute manic period was the claimant's refusal to comply with her Lithium

prescription." (A.R. 30.) The ALJ relied on treating doctor Janice Blumer's report that,

following her 2000 episode, Ms. Viles "improved significantly after being restarted on her

Lithium prescription." (A.R. 30 (citing A.R. 151).) The ALJ cited treating doctor Alan Cohn's

report to find Ms. Viles's 2003 episode was also linked to her improper medication. (A.R. 29

(citing A.R. 204) (stating Ms. Viles was in the "hospital recently due to [an] accidental over

ingestion of Li[thium].").) In addition, the medical reports created when Ms. Viles was

hospitalized in 2000 and 2003 identify Ms. Viles's failure to properly take her medicine as a

catalyst that caused Ms. Viles's need to be hospitalized. (A.R. 144 (2000 report providing

"[patient] is in manic state of known bipolar disorder []. Refusing to take medication

regularly."); A.R. 178 (2003 report providing "[patient], with a long history of bipolar disorder

under usual good control with lithium and Zyprexa, was admitted with a lithium overdose").)

"Substantial evidence means more than a mere scintilla but less than a preponderance."

*Andrews,* 53 F.3d at 1193. If the "evidence is susceptible to more than one rational

interpretation," one of which supports the Commissioner's final decision, the district court must

uphold the Commissioner's decision. *Andrews*, 53 F.3d at 1039-40; *Batson*, 359 F.3d at 1193;

*Thomas*, 278 F.3d at 954. In this case, the ALJ's interpretation of the evidence is rational and

substantial evidence supports the ALJ's decision.

  Further, the ALJ's conclusion does not ignore Ms. Viles's limitations, including the

symptoms she experienced prior to her episodes. The ALJ included Ms. Viles's limitations in the

RFC and then, based on the RFC and in light of Ms. Viles's limitations, concluded Ms. Viles was

not legally disabled at step five. *See infra* section V (analyzing the propriety of the RFC).

PAGE 9 - OPINION AND ORDER

**C.    *Ms. Viles's Condition While Properly Medicated***

Ms. Viles also challenges the ALJ's determination that Ms. Viles was not disabled when she properly took her medicine.  (Pl.'s Br. (#22) 13; Pl.'s Reply (#28) 1-2.)  The ALJ relied on treating doctor Blumer's report that Ms. Viles had "clear mental functioning" after resuming proper medication following her first episode, (A.R. 30 (citing A.R. 151)), and on the lay opinion of social worker Lisa Smith that Ms. Viles had a benign mental status, (A.R. 29 (citing A.R. 229-33)).  The ALJ also relied on the report of another social worker that Ms. Viles "reported that she was doing well and that Lane County Mental Health could close her file."  (A.R. 29 (citing A.R. 358, 361).)  Further, Dr. Davis stated Ms. Viles had no serious problems with daily activities and social functioning, (A.R. 458), DDS reported Ms. Viles "retains the capacity for understanding simple instructions" and, "with continued treatment, she will be able to . . . [perform] occasional complex tasks," (A.R. 252), and Dr. House described Ms. Viles as neat, well-groomed, and cooperative, and stated Ms. Viles's "[t]hought processes are organized," (A.R. 288).  Overall, the ALJ concluded Ms. Viles had "good levels of functioning when she returned to her medication."  (A.R. 30.)  The ALJ's decision is supported by substantial evidence the content of which is sufficient to justify the ALJ's decision.  *Batson*, 359 F.3d at 1193; *Andrews*, 53 F.3d at 1039.  Further, the ALJ did not ignore Ms. Viles's limitations but rather acknowledged her limitations and designed the RFC to account for her condition, as discussed *infra,* section V.

**IV.    Evidence From Drs. Truhn, Hartman, and Bonner**

**A.    *Standards for Medical Evidence***

The Ninth Circuit distinguishes between three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). To qualify as a treating physician, a physician must have an ongoing relationship with the claimant. *Benton v. Barnhart*, 331 F.3d 1030, 1038 (9th Cir. 2003) (citing 20 C.F.R. § 404.1502). A counselor is not an acceptable medical source and therefore is treated as a lay witness. SSR 06-03p, 2006 WL 3239939, at *2 (distinguishing weight given to a counselor's opinion from the weight given to an acceptable medical source's opinion); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996) (citing 20 C.F.R. §§ 404.1513, 404.1527).

A treating physician's opinion is given more weight than the opinion of other doctors. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). An examining physician's opinion is given more weight than the opinion of a nonexamining physician. *Lester*, 81 F.3d at 830.

An uncontradicted opinion of a treating or examining physician may only be rejected for clear and convincing reasons that are supported by substantial evidence. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991) (treating physicians); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990) (examining physicians). A contradicted opinion of a treating or examining physician may only be rejected for specific and legitimate reasons that are supported by substantial evidence. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983) (treating physician); *Andrews*, 53 F.3d at 1043 (examining physician). The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer*, 908 F.2d at 506 n.4.

The ALJ is responsible for resolving conflicts in the medical evidence. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). An ALJ may reject a physician's opinion that is

"brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427

F.3d 1211, 1216 (9th Cir. 2005).

### B.    *Medical Evidence from Dr. Bonner*

Ms. Viles contends the ALJ improperly rejected the medical evidence from treating

doctor Jocelyn Bonner.  (Pl.'s Br. (#22) 17; Pl.'s Reply (#28) 2-6.)  The ALJ described Dr.

Bonner's report as follows:

> Jocelyn Bonner, M.D., reported a [Global Assessment of Functioning score] of 60
> in December 2005, but the claimant's mental status was generally good and the
> claimant did not feel significantly impaired.  Claimant's bipolar disorder was assessed
> as "in remission."  However, Dr. Bonner felt the claimant appeared "unable to
> achieve gainful employment as her attempts at employment in the past have resulted
> in significant mental illness."  Subsequently, in April 2006, Dr. Bonner again
> reported that claimant's bipolar disorder was "in remission."[4]

(A.R. 32 (citations to the record omitted).)

Ms. Viles contends the ALJ rejected Dr. Bonner's comment—that Ms. Viles appeared

"unable to achieve gainful employment as her attempts at employment in the past have resulted

in significant mental illness"—because the ALJ concluded Ms. Viles is not disabled.  (Pl.'s Br.

(#22) 17; Pl.'s Reply (#28) 2-6.)

The ALJ did not explicitly adopt or reject Dr. Bonner's report.  Rather, the ALJ reviewed

all evidence including Dr. Bonner's report, came to a rational interpretation of the record, and

arrived at a conclusion that is supported by substantial evidence.  To the extent the ALJ

---

[4]A GAF score reports the clinician's judgment of an individual's overall level of
psychological, social, and occupational functioning.  Am. Psychiatric Ass'n, Diagnostic &
Statistical Manual of Mental Disorders 32 (4th ed. text revision 2000).  The clinician must
consider an individual's functioning on a hypothetical continuum of mental health-illness, and
place the individual on a 100 point scale.  *Id.* at 34.  A GAF score from fifty-one to sixty
indicates that an individual has "moderate symptoms . . . OR moderate difficulty in social,
occupational, or school functioning."  *Id.*

implicitly rejected Dr. Bonner's comment, the first half of the comment—that Ms. Viles was

"unable to achieve gainful employment"—is entitled to limited weight.  Dr. Bonner's statement

that Ms. Viles was disabled is not accorded much weight because medical sources, such Dr.

Bonner, do not have the expertise necessary to determine the vocational component of disability.

20 C.F.R. §§ 404.1505, 404.1527(e)(1).

To the extent the ALJ implicitly rejected the second half of Dr. Bonner's opinion—that

Ms. Viles's "attempts at employment in the past have resulted in significant mental illness"—the

ALJ's rejection was performed in satisfactory fashion: the ALJ rejected Dr. Bonner's comment by

finding inconsistency between Dr. Bonner's "in remission" conclusion and Dr. Bonner's disability

conclusion, and nonetheless proceeded to evaluate the opinion along with all other evidence in

the record.  (A.R. 32.)

### C.      *Medical Evidence from Dr. Hartman*

Ms. Viles argues the ALJ improperly discounted examining doctor Hartman's[5] medical

evidence.  (Pl.'s Br. (#22) 17; Pl.'s Reply (#28) 6-7.)  Dr. Hartman reported Ms. Viles had a

marked limitation in her ability to accept instructions and respond appropriately to criticism from

supervisors, and noted she experienced "harsh discipline when she was [] raised."  (A.R. 284,

288.)  Dr. Hartman also reported Ms. Viles was occasionally markedly limited in her ability to

get along with co-workers and peers and in her ability to maintain socially appropriate behavior

and adhere to basic standards of neatness and cleanliness.  (A.R. 284.)  Dr. Hartman concluded

---

[5]Although she treated Ms. Viles on two occasions, Dr. Hartman is an examining
physician rather than a treating physician because the occasions were unrelated and separated by
nearly two years.  (A.R. 197-202, 282-89); *see Benton*, 331 F.3d at 1038 (requiring an ongoing
relationship with the patient for a doctor to qualify as a treating physician).

PAGE 13 - OPINION AND ORDER

Ms. Viles would be at risk of exacerbating her manic and psychotic symptoms if she returned to work and thereby experienced more stress.  (A.R. 289.)

The ALJ concluded that, although Dr. Hartman's 2005 report carried less weight than more contemporary reports, it nonetheless "supports a conclusion that [Ms. Viles] has been stable throughout the relevant time period, with brief manic episodes due to lack of compliance with medication."  (A.R. 32.)  However, with regard to Dr. Hartman's assessments of Ms. Viles's marked limitations, the ALJ determined "there is nothing in the examination to support that conclusion, and it is not consistent with the earlier reports during the relevant time period.  That portion of the report is given no weight."  (A.R. 32 (citations to the record omitted).)

First, Ms. Viles contends the ALJ erred by failing to discuss Dr. Hartman's conclusion that Ms. Viles would be at risk of exacerbating her manic and psychotic symptoms should she return to work and thereby experience more stress.  (Pl.'s Reply (#28) 6.)  As discussed above, the ALJ identified stress as a component of Ms. Viles's episodes but determined the primary cause was Ms. Viles's lack of compliance with her prescription schedule.  *See supra* section III.B.

Second, Ms. Viles challenges the ALJ's rejection of Dr. Hartman's marked-limitation determinations, especially the determination regarding Ms. Viles's ability to accept instructions and respond appropriately to criticism from supervisors.  (Pl.'s Br. (#22) 17; Pl.'s Reply (#28) 6-7.)  The ALJ provided two reasons for rejecting Dr. Hartman's marked-limitation determinations: (1) "there is nothing in the examination to support that conclusion," and (2) "it is not consistent with the earlier reports during the relevant time period."  (A.R. 32 (citations to the record omitted).)

PAGE 14 - OPINION AND ORDER

In response to the ALJ's first reason—that "there is nothing in the examination to support that conclusion"—Ms. Viles makes two arguments to support Dr. Hartman's marked-limitation determinations.  First, Ms. Viles argues a "psychiatrist, contrary to a psychologist, gathers her clinical information in most part, through reading the medical records of a patient and conducting a clinical interview.  Psychiatrists . . . do not generally depend upon psychological tests to reach their diagnosis and/or conclusions."  (Pl.'s Reply (#28) 6.)  Second, Ms. Viles points to the comment in Dr. Hartman's report that Ms. Viles experienced "harsh discipline when she was raised" as support for Dr. Hartman's determination that Ms. Viles was markedly limited in her ability to accept instructions and respond to supervisors.  (Pl.'s Reply (#28) 7.)  In response to the ALJ's second reason—that Dr. Hartman's report "is not consistent with the earlier reports during the relevant time period"—Ms. Viles argues the record contains consistent evaluations, such as the letters from Dr. House and Cynthia Macklin.  (*Id.*)

The ALJ properly rejected Dr. Hartman's marked-limitation determinations, including the determination that Ms. Viles was markedly limited in her ability to accept instructions and respond to supervisors.  Dr. Hartman's report is contradicted by other evidence in the record.  For example, in February 2004 a doctor working for the State Disability Determination Service ("DDS") reported that Ms. Viles retained the capacity for understanding simple instructions and that, with continued treatment, Ms. Viles would be able to return to performing complex tasks.  (A.R. 252.)  In addition, Mr. Viles submitted testimony that Ms. Viles responded well to supervisors.  (A.R. 115.)  While the letters from Dr. House and Cynthia Macklin support Ms. Viles's contention, contrary evidence exists to support the ALJ's findings.  *See Edlund*, 253 F.3d at 1156 (deferring to the ALJ's rational interpretations to resolve conflicts in the record).

PAGE 15 - OPINION AND ORDER

The ALJ provided a specific and legitimate reason—that "there is nothing in the examination to support that conclusion"—for rejecting Dr. Hartman's marked-limitation determinations. (A.R. 32.)  Dr. Hartman's report fails to cite other reports and appears to rely solely on Ms. Viles's subjective complaints, which the ALJ found not fully credible.  *See infra* section VI.  An ALJ may reject conclusory and unsupported medical opinions.  *Bayliss*, 427 F.3d at 1216.  Ms. Viles's argument that a psychiatrist does not perform her own tests but instead relies on other doctors' tests is not applicable because Dr. Hartman's report does not identify any other reports on which she relied.  (A.R. 282-89.)  Ms. Viles's other argument—that Dr. Hartman's marked-limitation determination is supported by her comment that Ms. Viles experienced "harsh discipline when she was raised"—also fails because Dr. Hartman did not tie the comment to her conclusion in any way.  In fact, the comment appears four pages later in Dr. Hartman's report than the marked-limitation determination.  Thus, this argument appears to be a post hoc rationalization offered by Ms. Viles.  Additionally, the record contains contradicting evidence which indicates Ms. Viles was able to respond to supervisors and accept instructions. (*See* A.R. 115, 252.)

D.    *Medical Evidence from Dr. Truhn*

Ms. Viles contends the Appeals Council failed to give proper weight to examining Dr. Truhn's report.  (Pl.'s Br. (#22) 16-17; Pl.'s Reply (#28) 8-10.)  Dr. Truhn performed his examination of Ms. Viles on June 14, 2007, after the ALJ's hearing.  (A.R. 421.)  Ms. Viles submitted Dr. Truhn's report as additional evidence for consideration by the Appeals Council in determining whether to review the ALJ's decision.  (A.R. 11.)  The Appeals Council did "not assign great weight to his evaluation" for multiple reasons.  (A.R. 7-8.)

The final action of the agency and the decision appealed to this court is the ALJ's decision, not the Appeals Council's decision. 20 C.F.R. § 404.981. Nonetheless, 20 C.F.R. § 404.970(b) requires the Appeals Council to consider the entire record, including new evidence, to determine whether the ALJ's decision is "contrary to the weight of the evidence currently of record."

The Appeals Council weighed Dr. Truhn's report along with the entire record. The Appeals Council noted the proper weight to give Dr. Truhn's report in light of the time elapsed between the relevant period and Dr. Truhn's evaluation; Dr. Truhn's status as an examining physician; the extent to which Dr. Truhn's report relied on Ms. Viles's subjective testimony, which the ALJ discounted; Dr. Truhn's failure to distinguish between the relevant period and later periods; and inconsistencies between Dr. Truhn's report and Ms. Viles's past relevant work and activities of daily living. (A.R. 7-8.) Accordingly, the Appeals Council assigned Dr. Truhn's report limited weight and found no reason to review the ALJ's decision. (A.R. 7-8.) Thus, the Appeals Council satisfied its obligation to determine whether Dr. Truhn's report altered the balance of the evidence such that review of the ALJ's decision was necessary.

**V.    Completeness of the RFC**

Ms. Viles argues the ALJ erred by failing to include limitations on Ms. Viles's concentration, persistence, and pace in the RFC. (Pl.'s Br. (#22) 18.) The ALJ determined Ms. Viles's RFC limited her to working in a quiet environment with no exposure to the general public and only infrequent interaction with co-workers. (A.R. 30.) Ms. Viles contends the ALJ's failure to include limitations on Ms. Viles's concentration, persistence, and pace are inconsistent with

the the ALJ's acknowledgment of the DDS's finding that Ms. Viles had moderate "[d]ifficulties in [m]aintaining [c]oncentration, [p]ersistence, or [p]ace." (Pl.'s Br. (#22) 18; A.R. 246).

The moderate-limitation determination by the DDS that is relied on by Ms. Viles in her argument and that was acknowledged by the ALJ in his decision was assessed with regard to the B Criteria under step three of the five-step sequential inquiry, rather than with regard to the RFC under step four of the inquiry. (A.R. 246.) "[T]he limitations identified in the [B Criteria] are not an RFC assessment but are used to rate the severity of mental impairments. . . . The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." SSR 96-8p, 1996 WL 374184, at *4. Accordingly, the step-three determination relied on by Ms. Viles has limited bearing on the RFC analysis.

Although the DDS's step-three determination carries limited weight, the DDS, while assessing Ms. Viles's RFC for purposes of step four, determined Ms. Viles had a moderate limitation in her "ability to maintain attention and concentration for extended periods." (A.R. 251.) On the next page, however, in a space provided for the doctor to "explain [his] summary conclusions in narrative form" and "[i]nclude any information which clarifies limitation or function," the doctor explained: "Clmt sxs from bipolar d/o [sic] would be expected to result in some limitations to concentration for extended periods," but "[s]he retains the capacity for sustained simple tasks at this time. With continued treatment, she will be able to return to prior level of function, allowing for occasional complex tasks." (A.R. 252.) Thus, the doctor went out of his way to diminish his moderate-limitation finding by suggesting Ms. Viles's limitations did not preclude her from working. Forced to decipher the DDS report in the context of the entire record, the ALJ made a rational interpretation in crafting the RFC.

PAGE 18 - OPINION AND ORDER

VI.   **Ms. Viles's Testimony**

Ms. Viles contends the ALJ did not provide adequate reasons for rejecting her testimony.

(Pl.'s Br. (#22) 18-19.)

"Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597,

604 (9th Cir. 1989). "In deciding whether to accept a claimant's subjective symptom testimony,

an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility

of the claimant's testimony regarding the severity of her symptoms." *Smolen v. Chater,* 80 F.3d

1273, 1281 (9th Cir. 1996) (citing *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986)) (footnote

omitted).

> Under the *Cotton* test, a claimant who alleges disability based on subjective
> symptoms "must produce objective medical evidence of an underlying impairment
> 'which could reasonably be expected to produce the pain or other symptoms alleged
> . . . .'" The *Cotton* test imposes only two requirements on the claimant: (l) she must
> produce objective medical evidence of an impairment or impairments; and (2) she
> must show that the impairment or combination of impairments *could reasonably be*
> *expected to* (not that it did in fact) produce some degree of symptom.

*Id.* at 1281-82 (citations omitted).

Once the *Cotton* test is satisfied, the ALJ must assess the claimant's credibility. The ALJ

must provide clear and convincing reasons for discrediting a claimant's testimony regarding the

severity of his symptoms. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Smolen*, 80 F.3d

at 1283-89. The ALJ must make findings that are "sufficiently specific to permit the reviewing

court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v.*

*Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). An ALJ's decision is supported by substantial

evidence even if the clear and convincing reasons are not clearly linked to the determination

regarding credibility. *See Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

The ALJ may consider objective medical evidence and the claimant's treatment history as well as the claimant's unexplained failure to seek treatment or to follow a prescribed course of treatment. *Smolen*, 80 F.3d at 1284. The ALJ may also consider the claimant's daily activities and observations of physicians and third parties with personal knowledge about the claimant's functional limitations. *Id.*

The ALJ described Ms. Viles's testimony as follows:

[S]he testified that she had a breakdown and she had continued worries that she may have another episode because of stress. She described sleep disturbance, feeling "alienated," and difficulty interacting with others.
. . . .
. . . [Ms. Viles] cooks, does household chores, and goes shopping . . . she talks to a friend on the telephone . . . and babys[its] her grandson, and recently volunteered to stay with an older lady. She was able to complete the entire period of caregiving with the use of medication.

(A.R. 30, 31.)

The ALJ assessed Ms. Viles's credibility as follow: "[t]he claimant's allegations are generally credible within the parameters of the [RFC]" and "the claimant's medically determinable impairment could have been reasonably expected to produce the alleged symptoms, but [] the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." *Id.* Thus, the ALJ held Ms. Viles's testimony satisfied the *Cotton* standard but lacked credibility with regard to intensity, persistence, and limiting effects.

The ALJ determined that the portion of Ms. Viles's testimony that fit within the parameters of the RFC was credible. (A.R. 31.) The ALJ discredited, however, the portion of Ms. Viles's testimony—regarding intensity, persistence, and pace—that exceeded the bounds of the RFC. (A.R. 30.) Instead, the ALJ relied on substantial evidence that Ms. Viles's medication

PAGE 20 - OPINION AND ORDER

controlled such symptoms. *See supra* section III.B.  That evidence, along with Ms. Viles's

reported daily activities, are the ALJ's clear and convincing reasons for discounting in part Ms.

Viles's testimony.  (A.R. 29-32.)

## VII.    Mr. Viles's Lay Testimony

Finally, Ms. Viles argues the ALJ failed to consider and comment upon Mr. Viles's lay

witness testimony.  (Pl.'s Br. (#22) 19-20; Pl.'s Reply (#28) 10-11.)  Mr. Viles testified that, prior

to her illness, Ms. Viles was able to undertake stressful activities, such as working, driving,

caring for ill family members, and socializing, and that during episodes Ms. Viles had problems

with memory, concentration, completing tasks, understanding, following instructions, and getting

along with others.  (A.R. 110-16.)  However, Mr. Viles also testified that, while properly

medicated, Ms. Viles responded well to instructions and got along well with authority figures

such as police, bosses, and landlords.  (A.R. 115.)

An ALJ has a duty to consider lay witness testimony and may not reject lay testimony

without comment, but the ALJ may reject lay testimony if it is inconsistent with medical

evidence.  *Lewis*, 236 F.3d at 511; 20 C.F.R. §§ 404.1513, 404.1529.  The ALJ accepted, rather

than rejected, Mr. Viles's testimony; the ALJ found Mr. Viles's testimony "credible in light of the

evidence."  (A.R. 31.)  Mr. Viles indicated Ms. Viles generally functioned well while properly

medicated, and that her "biggest problem" was the symptoms she experienced during episodes.

(*Id.*)  Mr. Viles's testimony is consistent with the ALJ's assessment of Ms. Viles's RFC and the

ALJ's conclusion that Ms. Viles was not disabled while properly medicated.

**CONCLUSION**

The Commissioner's decision that Ms. Viles did not suffer from a disability and is not entitled to benefits under Title II of the Social Security Act is based on correct legal standards and supported by substantial evidence.  The Commissioner's decision is AFFIRMED and the case is dismissed.

IT IS SO ORDERED.

Dated this  9th  day of July, 2009.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge